IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 2:20-121-2 |
| | ) Judge Stephanie L. Haines |
| MICHAEL GLENN | ) |

**OPINION**

Michael Glenn ("Defendant") stands charged by superseding indictment [Doc. 589] with: conspiracy to possess with intent to distribute and to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); conspiracy to possess with intent to distribute and to distribute 28 grams or more of cocaine base, in the form commonly known as crack, in violation of 21 U.S.C. § 846 (Count Two); and, possession of firearms and ammunition by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count Four).

On November 18, 2022, Defendant filed a motion to suppress wiretaps [Doc. 992] and motion to suppress (search warrant for residence) [Doc. 994]. On March 23, 2023, the Government filed an omnibus response in opposition to Defendant's motions [Doc. 1080]. A hearing on the motions was held on May 16, 2023 [Doc. 1109]. On June 16, 2023, the Court entered an order denying Defendant's suppression motions [Doc.1132]. This opinion now follows.

**I.      Background**

The charges against Defendant in this case stem from an investigation conducted by the Federal Bureau of Investigation ("FBI") into drug trafficking activity and violence in the Hill District neighborhood of Pittsburgh. At the outset, the investigation targeted the "11 Hunnit" street gang. The FBI believed that Philip Robinson, an 11 Hunnit member/associate, was supplying narcotics to Timothy Harris. On November 18, 2019, the Honorable William S. Stickman

authorized at Misc. No. 19-1200 the initial interception of wire and electronic communications over target telephones used by Harris ("TT1") and Victor Simmons ("TT2").[1]

Through conversations intercepted pursuant to the initial Title III wiretap, investigators learned that Harris also was being supplied controlled substances by Defendant Glenn, who is not a member of, and has no affiliation with, the 11 Hunnit gang. On December 17, 2019, Judge Stickman authorized at Misc. No 19-1200(a) the continued interception of communications over TT1 and TT2, as well as the initial interception of *wire* communications over a target telephone used by Defendant ("TT3"). Initial interception of wire and electronic communications over a target telephone used by Robinson ("TT4") were authorized by Judge Stickman at Misc. No. 19-1200(b) on January 4, 2020.

On January 15, 2020, Judge Stickman authorized at Misc. No.1200(c), *inter alia*, the continued interception of wire communications and the initial interception of *electronic* communications, including text messages and SMS messages, over TT3 used by Defendant. Based on information obtained through the wiretaps on TT3, Judge Stickman on February 5, 2020, authorized at Misc. No. 19-1200(d) the initial interception of wire communications over a target telephone used by Donald Epps ("TT6"), and, on February 25, 2020, at Misc. No. 19-1200(e) authorized the initial interception of wire and electronic communications over another telephone used by Epps ("TT7"). The continued interception of wire communications over Epps's TT6, and wire and electronic communications over Epps's TT7, subsequently were authorized by Judge Stickman at Misc. No. 19-1200(f), Misc. No. 19-1200(g), and Misc. No. 19-1200(h), in March and April of 2020.

---

[1] All affidavits in support of each application for a Title III wiretap, as well as the authorizing orders issued by Judge Stickman, have been provided to the Court under seal as Exhibit 1 to the Government's omnibus response [Doc. 1080].

On June 15, 2020, United States Magistrate Judge Maureen P. Kelly issued several search warrants for various locations, including a residence utilized by Defendant and located at 1201 Smokeywood Drive, Pittsburgh, Pennsylvania. The Affidavit in support of the search warrants was authored and signed by FBI Special Agent Karen Springmeyer.[2] Agents executed the warrant at 1201 Smokeywood Drive on June 18, 2020, where they seized, *inter alia*, several firearms and ammunition, several bags of suspected marijuana, numerous cellular telephones and digital scales.

Defendant has filed a motion to suppress all evidence obtained pursuant to the Title III wiretaps authorized at Misc. No. 19-1200(a) for the initial interception of *wire* communications over his TT3, as well as all evidence obtained pursuant to the Title III wiretaps authorized at Misc. No. 19-1200(c) for the continued interception of wire communications over his TT3 and the initial interception of *electronic* communications, including text messages and SMS messages, over that target phone. In addition, he also moves to suppress all evidence obtained pursuant to the execution of the search warrant for 1201 Smokeywood Drive, arguing that the residential search warrant was obtained as fruit of the illegal wiretaps.

**II.    Standard**

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, permits the interception of wire, oral, and electronic communications by law enforcement upon a determination that there is probable cause to believe that: (1) an individual is committing, has committed, or is about to commit a particular offense; (2) that particular communications concerning that offense will be obtained through the interception; (3) that normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to

---

[2] The affidavit in support of the residential search warrant, as well as the search warrant signed by Judge Kelly, also have been provided to the Court under seal as part of Exhibit 1 to the Government's omnibus response [Doc. 1080].

be too dangerous; and (4) that the facilities from which the communications are to be intercepted are being used, or about to be used, in connection with the charged offense, or are leased to, listed in the name of, or commonly used by such person. *See* 18 U.S.C. § 2518(3).

The statute dictates that the wiretap application itself must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Thus, in order to lawfully grant an application for a wiretap, the issuing judge must not only find probable cause to believe an offense is being committed and that communications concerning that offense will be obtained through the interception, but also must find probable cause to believe that a wiretap is necessary, which requires that the application explain why "normal investigative techniques would be of no avail." *United States v. Garvey*, 588 F. App'x 184, 190 (3d Cir. 2014) (citing *United States v. Hendricks*, 395 F.3d 173, 180 (3d Cir. 2005)).

Extensions of a previously authorized wiretap require the same showing as an initial application. 18 U.S.C. § 2518(5). Thus, the same determinations as to probable cause and necessity arising from the inadequacy of other investigative procedures must be made. *United States v. Williams*, 124 F.3d 411, 428 (3d Cir. 1997)

### III. Discussion

#### A. Motion to Suppress - Wiretaps

##### 1. Probable Cause

Defendant first argues that the affidavit submitted in support of the wiretap application at Misc. No. 19-1200(a) lacks the requisite probable cause for the interception of communications over TT3. He contends that the affidavit contains "nothing more than bald speculation" that he was involved in the distribution of cocaine, and that there is "no factual basis to conclude" that he

was discussing cocaine or cocaine base at any time. Upon review of the challenged affidavit, the Court is satisfied that it contains more than sufficient indicia of probable cause to justify the initial interception of wire communications over TT3.

The Fourth Amendment requires that search warrants be supported by probable cause. U.S. Const. Amend. IV. The probable cause standards for property searches under the Fourth Amendment are well-established. Whether probable cause exists in a given case is to be determined by a practical and common sense approach. *Illinois v. Gates*, 462 U.S. 213 (1983). The appropriate inquiry is "whether, given all the circumstances set forth in the affidavit . . . including the [veracity] and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238–39.

In *Massachusetts v. Upton*, 466 U.S. 727 (1984), the Supreme Court emphasized that a reviewing court is not to conduct a "de novo probable cause determination" but is to decide merely "whether the evidence reviewed as a whole provided a substantial basis for the ... finding of probable cause." Thus, a warrant is to be upheld as long as there is a "substantial basis" for a "fair probability" that specified evidence will be found in a particular place. *Id.*

These same Fourth Amendment principles equally apply to the probable cause inquiry for authorizing a wiretap. *See United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983). Accordingly, in the present context, the challenged orders authorizing the wiretaps must be upheld so long as there is a substantial basis for a fair probability that an offense was being committed, that communications concerning that offense would be obtained through the interception, and that the phone from which the communications were to be intercepted was being used in connection with that offense. 18 U.S.C. § 2518(3).

Here, Judge Stickman had more than a substantial basis for concluding that there was a fair probability that interceptions over TT3 would lead to evidence of drug trafficking activity as described in the affidavit. The affidavit at Misc. No. 19-1200(a) was authored by FBI Special Agent Karen Springmeyer, a seasoned investigator with nearly a decade spent investigating drug trafficking offenses. The affidavit contains information showing that Defendant and others were committing drug trafficking activities [¶ 16], that they were using the targeted telephones in furtherance of those offenses [¶ 17] and that Defendant was the user of TT3 [¶ 28]. The affidavit then sets forth in detail specific information in support of those probable cause allegations and how that information was obtained. This includes the incorporated information set forth in the affidavit in support of the wiretap of TT1 authorized at Misc. No. 19-1200, as well as information gleaned from communications intercepted pursuant to that wiretap, and information obtained from a confidential source.

Specifically as to TT3, the affidavit states that Harris, using the tapped TT1, discussed drug transactions and sales with Defendant on TT3, utilizing code words for cocaine, on multiple occasions [¶¶ 53-83]. In an intercepted conversation on November 21, 2019, Harris complained to Defendant, the supplier of his cocaine, that the cocaine "was sliced," which the affiant believed was slang used by Harris to describe cocaine that had been overly diluted or "cut" [¶¶ 59-60]. On November 26, 2019, the affidavit outlines a series of texts and calls between TT1 and TT3 in which, in coded language, Defendant discusses re-supplying Harris with cocaine, as well as a small amount of marijuana, the following day [¶¶ 61-67]. The following day, another series of intercepted texts and calls showed Defendant and Harris making arrangements for Defendant to go to Harris's residence to supply him with drugs [¶¶ 68-81]. Investigators conducting surveillance of Harris's residence later observed a vehicle arrive at that residence and leave approximately three

minutes later, and the driver of that vehicle later was identified as Defendant [¶ 82]. Following the above observations, investigators intercepted Harris making numerous telephone calls on TT1 to unknown males and unknown females, in which he indicated that he had just obtained cocaine and/or cocaine base from Defendant [¶ 83]. Additional drug-related texts and phone calls between Harris on TT1 and Defendant on TT3 were intercepted between December 3 and December 6 [¶¶ 86-89], culminating in another brief meeting between Harris and Defendant at Harris's residence on December 6, 2019 [¶ 90].

Finally, the affidavit also contains information that toll records and pen register data showed that TT3 continued to be used to make and receive numerous calls to and from known and unknown members and associates of 11 Hunnit who deal in the purchase, sale, and distribution of narcotics, including approximately (60) calls and approximately (15) electronic communications with Harris on TT1 between November 26, 2019, and December 9, 2019 [¶ 94].

Contrary to Defendant's assertion that the allegations set forth in the affidavit are "pure speculation," the foregoing information is more than sufficient to establish probable cause that an offense was being committed, that communications concerning that offense would be obtained through the interception of communications on TT3, and that Defendant was using TT3 in connection with that activity. The affidavit plainly asserts that Defendant and Harris were discussing drug dealing. Although Defendant now contends it was an "uneducated guess" that he and Harris were discussing cocaine, the affiant, with considerable experience in drug trafficking investigations, explained that the coded terms in fact were commonly used euphemisms for cocaine. Moreover, in addition to the intercepted communications, visual surveillance of Harris's residence confirmed that Defendant appeared at that location on two occasions for brief visits consistent with the intercepted communications, and toll analysis and pen register data showed

significant contact between Defendant using TT3 and, not only Harris, but other known or suspected drug traffickers.

Under the totality of the circumstances, the Court is satisfied that there was more than a fair probability that drug trafficking communications would be intercepted on TT3. *See, e.g., United States v. Cannon*, 685 F. App'x 114, 117 (3d Cir. 2017) (based on similar information, including coded euphemisms for cocaine, issuing judge had more than substantial basis for concluding that wiretap would lead to evidence of specific drug-trafficking activity described in affidavit). Accordingly, probable cause supported the wiretap authorization for the initial interceptions of wire communications over TT3 at Misc. No. 19-1200(a).

Defendant also has challenged the sufficiency of the affidavit supporting the issuance of the wiretap at Misc. No. 19-1200(c), but he does so solely on the basis that the wiretap was authorized "overwhelmingly on conversations that were illegally intercepted" under the wiretap authorized at Misc. No. 19-1200(a), and, therefore, must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963). However, as the Court has found that the initial wiretap at Misc. No. 19-1200(a) was supported by probable cause, there likewise is no ground to suppress any communications intercepted via the wiretap authorized at Misc. No. 19-1200(c).

### 2. Necessity

Defendant also challenges the wiretap affidavits on the ground that they do not contain the requisite showing that the wiretaps were necessary because ordinary investigative techniques would not have been successful. Instead, he contends that the affidavits contained only "boilerplate assertions" that such techniques would not have been successful. This argument too is without merit.

Title III demands that an application for a wiretap authorization must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(1)(c), as well as a probable cause determination by the issuing judge that such normal investigative procedures have been tried and failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous. 18 U.S.C. § 2518(3)(c). These provisions provide what is known as the "necessity" requirement. *United States v. Ellis*, 693 F. App'x 137, 139 (3d Cir. 2017).

The necessity requirement "is simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974). Normal investigative procedures generally include, *inter alia*, (1) visual and aural surveillance, (2) general questioning or interrogation under immunity grants, (3) regular search warrants, and (4) the infiltration of conspiratorial groups by undercover agents or informants. *Ellis*, 693 F. App'x at 139 (citing *United States v. Armocida*, 515 F.2d 29, 37 (3rd Cir. 1975)). Such techniques also may include using a pen register or trap-and-trace device. *Id.* (citing *United States v. Killingsworth*, 117 F.3d 1159, 1163 (10th Cir. 1997)).

However, the application does not have to show these other techniques could not possibly succeed. *Id.* Instead, the application must describe the facts and circumstances surrounding the investigation that establish a "factual predicate" sufficient to allow the issuing court to determine such techniques will likely be unsuccessful or too dangerous. *Id.* (citing *United States v. McGlory*, 968 F.2d 309, 345 (3rd Cir. 1992). An application should "be tested in a practical and commonsense fashion," and "the statutory burden on the government is not great." *Id.* (citing *Armocida*, 515 F.2d at 38).

In this case, the affidavit in support of the initial wiretap application for TT3 at Misc. No. 19-1200(a) was sufficient to meet the necessity requirement of the statute and provided probable cause for Judge Stickman to authorize the wiretap of that phone. The affidavit describes in great detail the traditional investigative techniques used, including, *inter alia*, the use of confidential sources, controlled purchases, physical surveillance, search warrants, surveillance cameras, GPS location data, vehicle tracking devices, pen registers, and other wiretaps [¶¶ 150-223]. The affidavit further explained that all of these techniques had failed to reveal the full scope of the conspiracy, including all the participants, suppliers, customers, and storage locations involved. In addition, the affiant described various traditional techniques that were not attempted, such as the use of undercover officers, grand jury subpoenas, and mail covers, as well as why those techniques would have been ineffective or even dangerous [¶¶ 186; 190-195; 213]. Likewise, the affidavit in support of the application to continue the wiretap for TT3 at Misc. No. 19-1200(c) contains sufficiently similar statements regarding other investigative procedures that either were attempted and failed or were unlikely to succeed if attempted [¶¶ 135-211].

Based on the information set forth in the affidavits, the Court is satisfied that there was more than a substantial basis for Judge Stickman's probable cause determination that both the initial wiretap of TT3 and its continuation were necessary to uncover the full scope of the conspiracy in this case. *See, e.g., United States v. Braddy*, 722 F. App'x 231, 235 (3d Cir. 2017) (even where traditional investigative techniques may be sufficient to implicate some members of a conspiracy, wiretaps are permissible if necessary to uncover the full scope of the conspiracy); *see also United States v. Bailey*, 840 F.3d 99, 114–15 (3d Cir. 2016) ("'[i]n the proper circumstances, the instrumentalities of Title III may be employed to discover the full extent of crimes and conspiracies.'").

10

### 3. Sealing

Defendant's final challenge to the wiretap authorization in this case is that the wiretap recordings intercepted from the target telephones were not properly sealed as required under Section 2518(8)(a) of Title III. In addition to the recordings from TT3, the phone which Defendant himself used, he also seeks suppression on this ground of all recordings from all of the target telephones obtained in this case, because he "doesn't know at this juncture which calls will be used against him at trial" [Doc. 993 p. 18]. Defendant's argument is wholly without merit as to any of the wiretap recordings in this case, as the record shows that all intercepted recordings in fact were sealed in compliance with the statute.

Title III requires that recordings of intercepted communications be sealed by the issuing judge "[i]mmediately upon the expiration of the [authorizing] order, or extensions thereof." 18 U.S.C. § 2518(8)(a). The term "immediately" means that the tapes should be sealed either as soon as practical after the surveillance ends, or as soon as practical after the final extension order expires. *United States v. Williams*, 124 F.3d 411, 429 (3d Cir. 1997). Section 2518(8)(a) contains "an explicit exclusionary remedy for noncompliance with the sealing requirement." *United States v. Ojeda Rios*, 495 U.S. 257, 263 (1990). Specifically, the statute provides that the "presence of the seal . . . , or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of any wire, oral, or electronic communication or evidence derived therefrom . . . . ." 18 U.S.C. § 2518(8)(a).

Thus, in order to determine whether suppression is warranted under the statute, the Court first must ask whether the tapes were sealed immediately, *i.e.*, as soon as practical after the expiration of the authorizing order or extension. If so, the Court's inquiry ends, and the recordings need not be suppressed because the Government has complied with the sealing requirements of §

2518(8)(a). *See United States v. Carson*, 969 F.2d 1480, 1491 (3d Cir. 1992). If the tapes were not sealed promptly enough, however, the recordings are admissible only if the Government can provide an objectively reasonable explanation for any delay. *Id.*; *see also United States v. Williams*, 124 F.3d 411, 429 (3d Cir. 1997).

Here, the Court need not go beyond the first question, as the record establishes that all of the intercepted recordings in fact were sealed immediately, or as soon as practical, upon expiration of the applicable authorizing or extension orders. The Government has submitted to the Court as part of sealed Exhibit 1 to its' omnibus response seven separate orders entered by Judge Stickman in regard to each of the eight target telephones authorized by Misc. Orders 19-1200(a)-(h). All of these orders were entered within a week or so of the expiration of the applicable orders authorizing, or extending, the interceptions, and most within a few days. For example, specifically as to TT3 used by Defendant, Sealed Exhibit 1 includes an order to seal and designate custody dated February 21, 2020. This order was entered eight days after the cessation of interceptions over TT3, and six days after the expiration of the extension order entered at Misc. No. 19-1200(c). Three of those six days were a holiday weekend.

Based on the record, the Court is satisfied that all of the recordings in this case were sealed "as soon as practical" and in compliance with the requirements of Section 2518(8)(a). As the Third Circuit Court of Appeals has held, "'[a]s soon as practical' means as soon as is reasonably feasible given the administrative procedures which necessarily must be undertaken prior to sealing." *Carson*, 969 F.2d at 1496. Here, the short delays ranging from four to eight days likely can be attributed to the administrative procedures "necessitated by the process required to comply with the provisions of the Act." *Carson*, 969 F.2d at 1488. Such delays "related directly to readying the tapes for sealing" can include delays resulting from physically gathering the tapes, putting

12

them in boxes, and delivering the tapes to the supervising judge. See *United States v. Quintero*, 38 F.3d 1317, 1326 n. 5 (3d Cir. 1994). In addition, intervening weekends and holidays also may reasonably delay the period in which it is practical to seal the recordings. *Williams*, 124 F.3d 411, 429-30.

Defendant has not even argued that the recordings were not sealed as soon as practical within the meaning of the statute. In fact, he has offered no evidence or argument in support of his request for suppression on this ground at all, other than the unsubstantiated assertion that the recordings "were not properly sealed." This assertion is belied by the sealing orders entered by Judge Stickman. The record in this case establishes that all of the intercepted recordings in this case in fact were sealed, and that all were sealed as soon as practical after the expiration of the authorizing or extension orders. Accordingly, Defendant's request to suppress the recordings for non-compliance with Section 2518(8)(a) will be denied.[3]

**B.      Motion to Suppress – Residential Search Warrant**

Defendant also has filed a motion to suppress all evidence obtained pursuant to the execution of the search warrant for 1201 Smokeywood Drive issued by Judge Kelly. Defendant's sole basis for suppression of this evidence is that the residential search warrant is the fruit of the allegedly illegal wiretap authorization, and therefore any evidence seized pursuant to that invalid warrant should be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963).

---

[3] The Government argues that even if the wiretap authorizations in this case somehow were deemed invalid, the resulting intercepted evidence nevertheless should not be suppressed because law enforcement agents relied in good faith on the wiretap order. Whether the good faith exception applies in wiretap cases under Title III is an unsettled issue in the Third Circuit, and the other Courts of Appeals addressing this issue are split. *See United States v. Montgomery*, 290 F. Supp. 3d 396, 415 (W.D. Pa. 2018). Because the Court finds that the wiretap authorizations in this case are supported by probable cause and otherwise comply with the statutory requirements of Title III, the Court need not address this issue.

However, as the Court has found that the wiretaps of the target telephones were supported by probable cause, any evidence or information gleaned from those wiretaps was lawfully obtained. Therefore, there is no basis to suppress any evidence seized pursuant to the residential search warrant that was supported by probable cause based on the information obtained pursuant to the lawful wiretaps, and no further analysis is needed on this issue.

### IV. Conclusion

Based on the foregoing, there is no ground for suppression of any evidence in this case. The wiretap affidavits contain information sufficient to establish probable cause to believe that a drug trafficking offense was being committed, that communications concerning drug trafficking would be obtained through the interception, and that Defendant's target telephone was being used in connection with the drug trafficking activity. The affidavits also contain statements sufficient to establish probable cause to meet the necessity requirement of Title III.

Finally, all of the recordings were sealed "as soon as practical" in compliance with the requirements of Section 2518(8)(a). Moreover, because the wiretaps were lawful, there likewise is no ground to invalidate the residential warrant, which was supported by probable cause based on information obtained through the valid wiretap authorization.

Accordingly, finding no constitutional or statutory violations, Defendant's motions to suppress wiretap evidence [Doc. 992] and motion to suppress (search warrant for residence) [Doc. 994] have been denied.

Dated: September 22, 2023

Stephanie L. Haines
United States District Judge